PHILIP B. BOURNE, Administrator, & others *vs*. BENJAMIN HALL.

A testator devised as follows : "I give my wife L. the use and improvement of my homestead farm during the term of her natural life, and all my household furniture, farming utensils of every kind, all my live stock, such as cattle, sheep, &c., and one hundred dollars in cash to be at her own disposal. I also give to my said wife fifty dollars and six cords of wood yearly and every year during her life, to be paid her as hereinafter ordered, and I hereby order and my will is that my said wife shall, during the term of her natural life, support and maintain my son W. in a decent and comfortable manner, with sufficient food and raiment, or so long as my said son shall be divested of his mental abilities; the above bequests to be in lieu of dower in my estate.

" I give and devise to my son G., his heirs and assigns forever, after the demise of his mother, my homestead farm, always making said farm liable to support and maintain my son W., during the time he shall remain divested of his mental abilities, ordering my said son G., after the demise of his mother, to provide for him comfortable food and raiment. I also give my son G. one hundred dollars."

The testator died in 1812. W. was then *non compos mentis*, and so continued until his death in 1863. L., the testator's widow, died in 1841, and G. in 1816. The administrator of W. filed a bill in equity, alleging that W. had no support from said farm since April, 1826, that it was now owned in fee and occupied by the defendant, and praying that he might be required to account for the amount proper to be allowed from said farm for the support of said W. from April, 1826, until his death. *Held,* That there was no charge on the farm for the support of W. during the life of L. which could be then enforced, it being the intent of the testator to subject the estate of G. to the charge only from the time he became liable for the support of W., the charge previous to that time being a charge on the life estate of L.

*Held, further,* that the legal representative of G. was not a necessary party defendant to the bill, the defendant having derived his title to the farm from the administrator of G. by conveyance made by him in the lifetime of L., and having no equity which entitled him to require that the remedy be first exhausted against the legal representatives of G., even if they could be sued upon such a liability. *Dodge* v. *Manning*, 1 Comst. 298, stated and distinguished.

*Held, further,* that the defendant, under the circumstances of his purchase of the farm from the administrator of the devisee, must be presumed to have purchased it subject to the charge.

Plea of statute of possessions and also of statute of limitations, overruled. W., as one *non compos mentis*, being held not to be within the operation of either of said statutes, and his privilege in this respect not being qualified by the fact that he had guardians who might have sued for him.

BILL IN EQUITY brought by Philip B. Bourne, administrator of William Coggeshall, and some of the heirs of said William, against the respondent, Benjamin Hall.

The bill claimed that there was a trust created by George Coggeshall, in his will dated June 20, 1812, proved August 3, 1812, for the support and maintenance of his son William (the plaintiff's intestate), a *non compos ;* and that the provision for

his said son was made a charge upon the farm now owned by the respondent ; and asked that this alleged trust be carried into execution, and the respondent as owner of the farm be compelled to account for this support from April 1, 1826, to the time of the death of said William, December 29, 1863.

The clauses of the will upon which the claim rested are stated in the opinion of the court near the commencement thereof. The material allegations of the bill will sufficiently appear in the following summary of the answer.

The answer set up that the representatives of Lucy Coggeshall, the widow of the testator, and the representatives of George Coggeshall, son of the testator, were necessary parties to the bill, inasmuch as they were accounting parties. It denied that the testator at the time of his death was possessed of and entitled to considerable personal estate and more than sufficient to pay his just debts. It admitted that said testator about the 20th of June, 1812, did make his last will and testament, that he died in that year, and that said will was probated as set forth in the bill. It further admitted that the testator, at the time of his decease, left a widow and four children as also set out in said bill; that said William Coggeshall was *non compos* before and at the time of his father's death, and so continued till his own death, which occurred about December 29, 1863. As to the allegation in the bill that said testator owned at his decease more than enough personal property to pay all his debts and legacies, it averred that said administrator complainant never had or could have any right to claim anything as to the same (if said allegation were true) as against the respondent; nor could he now have any claim against the estate of said testator, more than three years having elapsed since the executors named in said will were qualified and gave notice of their appointment, and said respondent pleaded the same in bar under the statute, and because said executors settled their final account on the 5th day of October, 1813, which was not appealed from. And as to the allegation that the trusts and orders in said will were not carried out, and that the said William Coggeshall had not been supported and maintained out of the said farm, and that he has had no support and maintenance out of the said farm since about April 1, 1826, the respondent averred that said testator at the time of his de-

cease was seised of said farm, the average yearly rent of which was about two hundred dollars, and one other parcel of land devised to his son Thomas, which sold for five thousand four hundred and fifty dollars, and another piece of land devised to his daughter Patience that sold for nine hundred dollars, or about these sums. It admitted that said devises and legacies to the testator's wife were in lieu of her right of dower. It denied that it was the intention of said testator in and by his will, or that it was the legal construction of the same, that the testator had thereby made said farm primarily and wholly liable for the support and maintenance of said intestate, and also denied that said intestate at the time of his decease had any claim, or that complainant as administrator had at the time the answer was filed any claim, or right to any claim, on either of said devises in said will for the support and maintenance of said intestate, or that said farm in the possession of the respondent was or could be made liable for or be charged with any such claim. That if there ever was such right on the part of the intestate, which accrued to him and for which said farm could be made liable, that said liability could not extend back beyond six years prior to the filing of said bill, and the respondent pleaded the statute of limitations, ch. 177, secs. 3 and 7, of the Revised Statutes, in bar of the same. It further alleged on information and belief, that the true intention and meaning of said testator, and the provisions of his said will in relation to the support and maintenance of said intestate, had been fully carried out and performed according to the true intent and meaning thereof, and that said intestate always, after the decease of his father to the time of his own decease, continuously had and received the support and maintenance provided for him in and by said will. That said support and maintenance provided for in said will had been furnished to and received by said intestate by and from the parties made liable in and by said will, and that said liability was fully discharged by them, and that at the time of said intestate's death there was nothing due or owing on account of said liability to support, nor any charge or incumbrance resting on said farm by reason thereof. That said intestate, after his father's death, lived on said homestead farm with his mother, the said Lucy, and was provided for by her and by her supported for

many years; that after a while he went and lived with his sister Patience on the Throop farm, to which he and said Patience had become heirs; that one William Hatch, his nephew, was appointed his guardian on the 2d day of August, 1830; that said William Hatch qualified as guardian, acted as such, and supported the intestate from the time he left said homestead to the 31st day of May, 1831, when he duly settled his final account, which was allowed and not appealed from; that the intestate continued to reside with his sister Patience, and was supported by her from the time said William Hatch ceased to support him up to the time of her death, on the 4th day of June, 1857; that said Patience was appointed his guardian November 2, 1835, was duly qualified, acted as such, and settled her final account on the 3d day of February, 1851. That on the death of said Patience, Lydia Hatch, the widow of the aforesaid William Hatch, assumed the responsibility and charge of the support of said intestate, and did provide for and support him with comfortable food and raiment from the death of said Patience to the time of his death; that she was on the 3d day of August, 1857, appointed guardian to said intestate, was duly qualified to act, and acted as such up to the time of the death of the intestate; that she settled her guardianship accounts from year to year, and her final one on the 1st day of February, 1864, and none of said accounts were appealed from except the last. That the fee of said farm devised to said George Coggeshall, Jr., in and by said will, was sold by his administrator about A. D. 1819 or 1820 to Daniel Bradford, and by the latter sold about the year 1825 to Nathaniel Bullock, who about that time purchased of said devisee, Lucy Coggeshall, her life estate in the same, and so became the owner of said farm. That said respondent in the year 1832 purchased *bonâ fide* said farm of said Bullock, and paid him therefor its full value, to wit, four thousand four hundred and twenty-five dollars, and took a deed thereof to himself, and then entered into the actual possession of said farm in the faith that he had a perfect title thereto, and had since then, on the faith of said title, made improvements upon said farm, and that during all said time no claim had ever been made on him or on said farm by said intestate or by either of his guardians, or by any one in his behalf, for a period of over thirty years, and he claimed the same

to be in bar of said complainant's bill. Lastly, the respondent pleaded twenty years' possession in bar, under chap. 148 of the Revised Statutes.

*Turner & W. H. Greene*, for the complainants, made the following points and submitted the following authorities: 1st. That in whatever way, or for whatever purpose, or in whatever form, trusts arise under wills, they are exclusively within the jurisdiction of courts of equity. Story's Eq. Juris. §§ 29, 1058. 2d. That no one need be made a party defendant from whom nothing is demanded and against whom no decree can be obtained. *Kerr et al.* v. *Watts*, 6 Wheat. 550; Barbour on Parties, 333–462; *Reid* v. *Vanderheyden*, 5 Cow. 719; *Townsend* v. *Auger*, 3. Conn. 354; *Pleasants* v. *Glasscock*, 1 Sm. & M. 17; *Smith* v. *Wyckoff*, 11 Paige, 49; Story's Eq. Pl. §§ 181, 197, 211. 3d. That by the terms of said will the homestead farm of the testator was expressly charged with the support and maintenance of said intestate, and the aforesaid devisees, L. & T. B. Coggeshall, held said estate as trustees under the will. 1 Jarman on Wills, 333; 1 Redfield on Wills, § 17; Story's Eq. Juris. §§ 1068, 1070; *Malim* v. *Keighley*, 2 Ves. Jr. 333; *Warner* v. *Bates*, 98 Mass. 274; *Smith* v. *Wyckoff*, 11 Paige, 49. 4th. That if a purchaser has notice of a trust at the time of purchasing the trust estate, he becomes a trustee, notwithstanding he has paid a valuable consideration. *Murray* v. *Ballou*, 1 Johns. Ch. 566; *Gallatian* v. *Cunningham*, 8 Cow. 361; *Hagthorp et ux. et al.* v. *Hook's Adm'rs*, 1 Gill & J. 270; *Wormley* v. *Wormley*, 1 Brock. 330. 5th. That the registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate legal or equitable in the same property, and that where a trust is created under a will, the record of the will in the probate court is notice of the trust to everyone, and there is no difference between actual and constructive notice in its consequences. Story's Eq. Juris. § 403, and cases cited; *Parkist* v. *Alexander*, 1 Johns. Ch. 398; *Oliver* v. *Piatt*, 3 How. U. S. 333; *Ellis* v. *Woods*, 9 Rich. Eq. 19; Hill on Trustees, 510. 6th. That the respondent being a purchaser with notice held the estate subject to the trust in the same manner as the trustees themselves held it; and a court of equity would compel him to perform the trust. Story's Eq. Juris. §§ 1257, 1258–1261; *Shiba* v. *Ely*, 2 Halst. Chan. 181;

*Cholmondely* v. *Clinton*, 2 Meriv. 357–8–9; v. *S. C.* 2 Jac. &
Walker, 153; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Wells* v.
*Beall*, 2 Gill & J. 458. 7th. That the trust aforesaid is such a
subsisting and continuing trust as is not reached by the statute
pleaded by the defendant; nor is lapse of time a bar to the suit.
Story's Eq. Juris. §§ 1061, 1364, 1521, note 2, 1520 *a*, 1521,
1521 *a*; *Kane* v. *Bloodgood*, 7 Johns. Ch. 116. Angell on Limita-
tions, §§ 166, 169, 178, 468, and cases cited, 472; *Prevost* v.
*Gratz et al.* 6 Wheat. 481; *Raymond* v. *Simonson*, 4 Blackf. 77;
*Payne* v. *Hathaway*, 3 Vt. 212; *Adm'r of Allen* v. *Ex'rs of
Woolley*, 1 Green N. J. 209; *Baylor's Lessee* v. *Dejarnette*, 13
Grat. 152; *Blower* v. *Blower*, 5 Jur. N. S. 33; *Hemenway* v.
*Gates*, 5 Pick. 321; 2 Eq. Digest, 257; Story's Eq. Pleadings,
§ 122; *Greenwood* v. *Greenwood*, 5 Md. 334; *Clifton* v. *Haig*, 4
Desau. 330; *Farnam* v. *Brooks*, 9 Pick. 212; *Staniford* v. *Tuttle*,
4 Vt. 82; *Collord's Adm'r* v. *Tuttle*, 4 Vt. 491; Story's Eq. Juris.
§ 317; *Codman* v. *Rogers*, 10 Pick. 112; *Oliver* v. *Piatt*, 3 How.
U. S. 411. 8th. That granting that the trust is such as is ordi-
narily affected by the statute, still the statute is no bar to this suit,
because the complainant's intestate was under disability at the
time the right accrued, and so continued under such disability up
to the time of his death in 1863. Rev. Stat. ch. 177, § 6; ch. 148,
§ 3; Angell on Limitations, § 479.

*James Tillinghast*, for the respondent (*W. H. Potter* with him
filing a brief on the same side), contended that the bill could not
be maintained under the circumstances of the case and after so
great a lapse of time, and made the following points and submit-
ted the following authorities: —

The charge upon the farm, if any, is at most only that of a
secondary or collateral liability.

I. In the devise to the testator's wife, there can be no pretence
to say that there is any charge at all upon the farm. There is no
language to indicate it. On the contrary, it is expressly made a
personal charge upon the widow herself, who, by accepting the
devise, assumed it both at law and in equity. *Smith* v. *Jewett*,
40 N. H. 530; *Gridley* v. *Gridley*, 24 N. Y. 130; *Glen* v. *Fisher*,
6 Johns. Ch. 32.

II. This farm is not *primarily* charged with the support of
William, even after the decease of the testator's wife (Lucy);

and when the estate comes to the son (George), the testator uses this plain and direct language in the devises to his son George : " *Ordering* my said *son George*, after the decease°of his mother (Lucy), *to* (do what?) *provide for William comfortable food and raiment,*" &c.   The testator *first orders his wife* (Lucy), *during her life*, to support and maintain the son William ; and then, when she is dead, and the farm comes to George, he says : " Ordering my said son George, after his mother's death, to provide for him (William) comfortable food and raiment," &c.   A *primary personal liability* throughout ; which also, by the acceptance of the devise, became a direct claim at law and in equity, against George himself and his estate.   See cases *supra*.

The trust (if any) was purely discretionary, the execution of which by the guardians and owners of the farm conjointly, in good faith, will not be revised by a court of equity.   Hill on Trustees, *488 ; *Hawes Place Congregational Society* v. *Trustees of the Hawes Fund*, 5 Cush. 455 ; *Hart* v. *Tribe*, 18 Beav. 215 ; *Bynes* v. *Blackburn*, 26 Beav. 41.   It was personal for William alone and died with him, and cannot be enforced for the benefit of any other person.   *Sharon* v. *Simonds*, 30 Vt. 458.

III. The estates of Lucy and George Coggeshall are indispensable parties to this bill, supposing it could be maintained in any form.   They have sold the farm, as they had the right to do, and the purchaser was not bound in fact ; it being discretionary, and to be applied from time to time, it was not possible for him to see to the application of the purchase money, and he has the right to insist that the remedies against the devisees and their estates shall be first exhausted before resort is had to his estate.   *Dodge* v. *Manning*, 1 Comst. 298 ; *McLachlin* v. *McLachlin*, 9 Paige, 534 (538) ; *Steele* v. *Levisey*, 11 Grat. 454 ; *Jones* v. *Greatwood*, 16 Beav. 528.

IV. It can make no difference that in fact the intestate's own estate has been in part applied to his support by his guardians.

(*a.*) This is a matter with which the defendant has and could have nothing to do, and no control over.   For aught that he could know, and for aught that appears in this case, the whole value of the farm as realized by the devisees may, during the long life of the intestate, have been exhausted, rendering this re-

sort to William's own estate absolutely necessary for his comfortable support.

The *non compos* having been in fact supported to the apparent satisfaction of all concerned, the defendant was under no obligation, in fact had no right to inquire further, as to how, by whom, or from what sources this support was derived. No claim being made upon him or his farm for over twenty years, he had a right to assume, in fact could not do otherwise than assume, that it was properly furnished by those who, by acceptance of the devises to them, had personally assumed its obligation, and his land thereby discharged. As against him the legacy must be presumed to have been paid. *Crawford* v. *Patterson*, 11 Grat. 364; *Kingsland* v. *Betts*, 1 Edw. Ch. 596 (600); *Crandall* v. *Roystadt*, 1 Sandf. Ch. 40; *Wood* v. *Richardson*, 4 Beav. 174; 2 Story Eq. Juris. § 1520 *b* (9th ed. Redfield); *Emery* v. *Grocock*, 6 Mad. 54.

(*b.*) And even supposing it was a misapplication of the estate of the *non compos* by his guardians, it is too late now to question it. The suit is evidently brought for the benefit of the complainants as next of kin of the *non compos*, who have always been competent to see that his estate was properly administered; and they not having chosen to do so at the proper times, when the guardians' accounts were settled, cannot now, after this long lapse of years, visit the loss thus occasioned by their own gross laches upon this defendant, particularly as no fraud or collusion is charged or pretended, and no excuse given for the delay.

It is at the most but a constructive trust. *King* v. *Dennison*, 1 Ves. & B. 272; 1 Story Eq. Juris. § 64 *a*, *c*, § 385. And the claim is absolutely barred by time as stale, as well as by the statutes of limitations and adverse possession pleaded in the answer. Angell on Limitations, 508; 2 Story Eq. Juris. § 1520 and note (9th ed. Redfield); Hill on Trustees, 264 and note; *Jones* v. *Tuberville*, 2 Ves. Jr. 11; *Beckford* v. *Wade*, 17 Ves. 87 (96, 97); *Portlock* v. *Gardiner*, 1 Hare, 594 (604–607); *Gregg* v. *Gregg*, 15 N. H. 190.

If the guardians have been remiss in the performance of their duties the plaintiff's claim is upon them and their sureties, not upon this defendant, an innocent third party. *Anon.* 1 Salk. 153; *Omerod* v. *Hardman*, 5 Ves. 736; *Sims* v. *Sims*, 2 Stock. 158.

(*c.*) But it was, in fact, no misapplication by the guardians. The great and only object of the testator was that his son William, while *non compos, should not come to want* — should not become a *subject of charity.* That he should, " while divested of his faculties," have comfortable food and raiment and proper care ; and this being done, that his wife (Lucy) and son (George) should have the full benefit of the farm.

The testator could not have intended that these provisions of his will, securing a support for William during his life, should be so construed as to be exclusive of William's own personal labor, which he had been accustomed to render, and of his other means of support, and thus in effect deprive his widow (Lucy) and son (George) of his bounty, and out of them and their estate to accumulate a fund for William's remote heirs, or even creditors, after his death. *Rawlins* v. *Goldfrap*, 5 Ves. 440 (444) ; *Ellerbe* v. *Ellerbe*, 1 Speer's Eq. 328 ; *Conkey* v. *Everett*, 11 Gray, 95 ; *Smith* v. *Jewett*, 40 N. H. 535, 536.

DURFEE, J. This bill is brought by the administrator and some of the next of kin of the late William Coggeshall, to subject the farm of the defendant to the payment of certain sums of money for the past maintenance of said William, the same being claimed to be a charge on said farm under the will of the late George Coggeshall, who was the father of said William. The clauses of the will upon which the claim rests, are substantially as follows : —

"I give my wife, Lucy Coggeshall, the use and improvement of my homestead farm during the term of her natural life, and all my household furniture, farming utensils of every kind, all my live stock, such as cattle, sheep, &c., and one hundred dollars in cash to be at her own disposal. I also give to my said wife fifty dollars and six cords of wood yearly and every year, during her life, to be paid her as hereinafter ordered, and I hereby order and my will is that my said wife shall, during the term of her natural life, support and maintain my son William in a decent and comfortable manner, with sufficient food and raiment, or so long as my said son shall be divested of his mental abilities ; the above bequests to be in lieu of dower in my estate.

" I give and devise to my son, George Coggeshall, Jr., his heirs and assigns forever, after the demise of his mother, my home-

stead farm, always making said farm liable to support and maintain my son William during the time he shall remain divested of his mental abilities, ordering my said son George, after the demise of his mother, to provide for him comfortable food and raiment. I also give my son George one hundred dollars."

George Coggeshall, the testator, died in 1812, and his will was duly admitted to probate. William Coggeshall was, at the time of his father's death, *non compos mentis*, and so continued until his own death, which occurred on the 29th of September, 1863; and from 1830, he was for a greater part of the time under guardianship. The testator's widow, Lucy Coggeshall, died March 14, 1841, and the testator's son George died June 12, 1816. The bill charges that the trusts and orders of said will have not been carried out, and that said William has had no support and maintenance from said farm since April, 1826; that said farm is now owned in fee and is occupied by the defendant; and the bill prays that an account may be taken of the amount proper to be allowed from said farm for the support and maintenance of said William from April, 1826, till his decease, and that the defendant may come to a fair and just account in the premises.

The will, in addition to the clauses in favor of said William above recited, also provides that if the said William should at any time be restored to his mental understanding, he should then have an equal third part of the testator's real estate, which was divided by the will between the testator's two sons, Thomas and George; and this provision is cited in the bill as showing an intention on the part of the testator to give each of his three sons a third part of the real estate or its equivalent, and to subject the farm devised to said George always to the support and maintenance of said William.

We think it evident from the bill, answer, and exhibits, that for many years previous to his death the said William did not receive any support from the farm aforesaid, or from its devisees; and that during that time his own property was used, to some extent at least, to provide "the comfortable food and raiment," which by said will the said devisees were directed to provide for him. The question is therefore raised whether in the case, as it is now framed, the defendant's farm can be charged to

make up, either wholly or in part, for the neglects of the said devisees.

We will first consider whether there was any charge created for the support of the *non compos* during the life of Lucy Cogges-hall, which can now be enforced. No such charge was expressly created by the first of the two clauses of the will above recited. By that clause the testator gives to his wife Lucy the use of his homestead farm for life, with other property, and an annuity of fifty dollars and six cords of wood, and orders that his wife shall, during her life, support his son William, or so long as he is *non compos*. The devisee is personally charged in respect of the estate, and if the farm is charged, it is charged by implication, and therefore only to the extent of the estate devised. The estate devised was a life estate; and clearly a charge upon a life estate, the same being retained as such, could not be enforced after the estate determined by the death of the life tenant. In the case at bar the life estate became merged in the fee by the union of the two estates in the defendant's grantor prior to the decease of the life tenant. The effect of this upon the charge, if any there was upon the life estate, has not been discussed. The plaintiffs have not, however, contended that it would have an effect to enlarge their remedy so that they can resort to the farm after her decease, upon any claim which would not have entitled them to resort to the farm in case she had retained her life estate until her decease, and we are not prepared to hold, in the absence of authority, that any such enlargement of the remedy would result from the merger of the life estate in the fee. The plaintiffs claim, not by virtue of any charge to be inferred from the language of the first clause, but by virtue of the charge expressly created by the second clause. In the second clause the testator gives his son George, after the demise of his mother, his homestead farm, "always making said farm liable to support and maintain his son William," &c., and ordering said George, after the demise of his mother, to support William. The plaintiffs urge particularly, in support of their construction, the use of the word "always." We are, however, to ascertain the intention of the testator not from a single word or phrase, but from the will as a whole. Looking at the will thus, we find that he first gives the farm to his wife for life, with certain other property, orders

her to support the *non compos* during her life, obviously believing that she will be able to do so with the property given. He has thus provided for William during the life of his wife. Then, after certain other devises and bequests, he gives his homestead farm to his son George, *after the demise of his mother*, " always making said farm liable," &c., and ordering said George, *after the demise of his mother*, to support William. There is a devise to one son and a provision for the support of the other, the devise in the one case and the provision in the other being designed to become operative after the death of the mother. Can we say, in view of this fact and of the manner in which the second clause stands related to the first, that the testator meant more, by the use of the word "always," than always to subject the farm as then given to the support of William, — that is to say, always after George comes into possession thereof and becomes personally chargeable? If we say the farm is to be liable during the life of the mother and for her defaults, we expose the estate, given to the son, to the risk of being diminished, if not used up, to satisfy a claim accumulated by her defaults. Under such a construction the son, by no fault of his own, might lose, either wholly or in part, the benefit of the devise to him. If we put ourselves in the place of the testator, it is easy to conceive that when he gave the farm to George after the demise of his mother, always making it liable for the support of William, he meant always from the time the devise was to take effect; and we deem this the more reasonable construction in view of the other parts of the will. We therefore decide that there was no charge on the farm for the support of William during the life of Lucy Coggeshall, which can be now enforced under this will.

The defendant objects that the bill is defective for want of necessary parties, to wit, the legal representatives of Lucy and George Coggeshall. If our view just stated be correct, the objection can only apply in the case of George, and we are therefore to inquire whether his representative is a necessary party. The defendant contends that the said George is made personally and primarily liable for the support of William, and that therefore the farm cannot be resorted to until the remedy against his legal representative has been exhausted. The case of *Dodge* v. *Manning*, 1 Comst. 298, cited by the defendant, is a precedent in

point, unless the case at bar can be distinguished from it. In that case the testator gave to his granddaughter a legacy of two hundred and fifty dollars to be paid out of his estate by his grandson, to whom, after certain devises and bequests, he gave the residue of his real and personal estate. The defendants became purchasers under a mortgage made by the grandson of a portion of the real estate devised to him, and the bill was brought to obtain payment of the legacy and interest out of the land so purchased. The court held that the devisee, by accepting the devise, became personally liable for the payment of the legacy, and that the remedy should be first exhausted against him and the real and personal estate of the testator in his hands, before the defendants should be charged in respect to the real estate purchased by them. But the court adds : " If they had purchased expressly subject to the payment of the legacy, that of itself might have made the estate in their hands directly and primarily chargeable." It will be observed that here the charge rested upon both real and personal estate, and that the defendants had purchased only a portion of the real estate, and furthermore, the devisee was still living, and for anything that appears, in solvent circumstances. In the case at bar the facts are different. The defendant has purchased the entire estate charged by the will. The devisee is dead, having died nearly twenty-five years before the time when, if he had lived, he could have been called upon for the support of William. In what way can his administrator be charged on such a liability ?  The defendant does not inform us. But further, the title of the defendant to the fee of the farm, as appears by his answer, is derived, not from George Coggeshall, but from his administrator, by a conveyance made in about 1819 or 1820. The administrator could sell only by leave of the court of probate to pay the debts of the intestate, and only to the extent of the intestate's estate. We feel constrained, especially in view of the fact that the liability was one which could not then have been discharged, to hold that the person so purchasing the entire property charged must be deemed to have purchased subject to the charge, and that consequently he has no equity which entitles him to require that the remedy shall first be exhausted against the legal representative of George Coggeshall, even if the legal representative of George can be sued upon the

liability. We think therefore that the plaintiffs are entitled to prosecute the bill without making the legal representative of George Coggeshall a party defendant, the relief sought being simply an enforcement of the charge upon the farm, and nothing being demanded of him. *Kerr et al.* v. *Watts*, 6 Wheat. 550.

Another claim or suggestion in defence is that the devisees had the right to sell the farm, and that the purchaser was not bound to look to the application of the purchase money. But as we have seen, the sale of the fee of the farm was not made by the devisee but by his administrator, and under such circumstances that the purchaser must be presumed to have purchased it subject to the charge. Such being the case, the suggestion is without force. And see *Clapp* v. *Clapp & others*, 6 R. I. 129; *Pickering* v. *Pickering*, 15 N. H. 281; *Felch* v. *Taylor*, 13 Pick. 133; *Swasey* v. *Little*, 7 Pick. 296; *Harris* v. *Ross*, 4 Jones Eq. 413.

The defendant pleads or sets up in his answer the statute of limitations and the statute of possessions, he having been in possession of said farm, claiming it as his own, for more than twenty years. We deem it a sufficient reply to these pleas that the said William was *non compos mentis*, and, as such, was, by express exception, not within the operation of either of said statutes. The fact that he had guardians who might have sued for him does not in our opinion qualify the privilege which is conferred upon him by the exceptions in those statutes, there being no words in either statute which import that the privilege is to be subject to any such qualification.

The defendant further contends that the provision of the will for the support of William was personal to himself and expired with him. We quite agree with the defendant that no one but William can claim to be supported under the will; but it appears that, by reason of the default of those chargeable with his support, his estate has been lessened, and the question is whether, to the extent to which it has been lessened, it ought not to be indemnified. The defendant says not. He says that after the death of the testator property came to the *non compos* by inheritance, and that it is not to be supposed that it was the intention of the testator that he should continue to have his support from Lucy and George Coggeshall after he had come into possession of property

of his own. Doubtless the guardian of William, after he had become possessed of property of his own, would be justified in affording him a better support than before, and for the additional expense of such better support would be entitled to look only to the property of his ward; but we can discover no indications in the will that the testator did not intend his son should continue to participate in his bounty as he had previously been entitled to do in the event of his inheriting property from another source. On the contrary, the fact that the will provides that, if he should become of sound mind, he should have a third of the real estate devised to the other two sons, shows that he was an object of special testamentary care and regard.

The defendant refers to the cases of *Rawlins* v. *Goldfrap*, 5 Ves. Jr. 440, 444, and *Ellerbe* v. *Ellerbe*, 1 Speer's Eq. 328, in which provisions for support received the construction for which he contends. But the language used by the testator in those cases, and the circumstances in view of which it was to be construed, so clearly distinguish those cases from this, that we do not think they ought to be allowed to control what we regard as the fair construction of the will before us.

The defendant urges that if the *non compos* continued entitled to support under the will, notwithstanding his own property subsequently inherited, and did not have such support, the fault was that of his guardians, who did not enforce it, and the plaintiffs can look only to them for indemnity. We do not take this view. It may have been the duty of the guardians to enforce the right of their ward under the will, as it would have been their duty to enforce the payment of a debt due. to him, if any such there were; but, in our opinion, their neglect did not operate as a release of the duty of support in the one case, any more than it would as a release of the debt in the other. The duty imposed by the will was an active duty to care for a person incapable of caring for himself, and should have been voluntarily performed, without waiting for any request; and if, by reason of any neglect to perform it by those charged with the duty, the estate of the *non compos* has been reduced, we think his administrator is entitled to resort to the farm, upon which his support was charged, to have the estate, to the extent to which it was so reduced, made whole again. Beyond this, however, we do not think any claim

of the plaintiffs can be allowed. If at any time the *non com-pos* has been gratuitously supported, his estate during that time having sustained no loss, can be entitled to no indemnity. We also think there is no reason to suppose that the testator intended to have the *non compos* supported in idleness, inasmuch as it appears that he was accustomed to work during the lifetime of the testator, and therefore we do not think his estate is to be benefited by any reduction in the cost of his support by reason of his services to the persons furnishing it. *Sheldon* v. *Purple*, 15 Pick. 528; *Conkey* v. *Everett*, 11 Gray, 95. On the contrary, if at any time the guardians relieved the *non compos* from the necessity of rendering such services as he was accustomed to render, when he might with propriety have rendered them, and thereby increased the expense of his maintenance, that is a matter to be considered in the account against the defendant.

The defendant also claims the benefit of certain alleged estoppels which he contends ought to bar the recovery, either wholly or in part, of the plaintiffs suing as next of kin of the *non compos*, and of the administrator suing in their behalf. The facts upon which the estoppels are claimed do not appear, or appear only in part, in the pleadings, and the defendant did not in his answer claim the benefit of any estoppel, the claim being first made at the hearing. It may be questioned if, in such a state of the pleadings, the defendant is entitled to insist upon the alleged estoppels. But if he can, it is not pretended that as to George Coggeshall, one of the plaintiffs and next of kin, there is any estoppel, except in so far as the bill seeks indemnity to the estate of the *non compos* for the default of Lucy Coggeshall, and to that extent we have already held that the bill cannot be maintained. It is not even claimed that as to George Coggeshall there is any further estoppel, and therefore, in any event, the administrator is entitled to prosecute in his behalf, and so is entitled to an account to ascertain the amount due the estate for failure to support the *non compos* after the death of Lucy Coggeshall.

The defendant also urges, as a ground of defence, the staleness of the claim. But this objection applies to only a part of the claim, and will be entitled to due consideration by the master in taking the account.

Bourne v. Hall.

We think a decree should be entered sending the case to a master to take an account, not extending back, however, to any time anterior to the decease of Lucy Coggeshall.

*Decree accordingly.*

POTTER, J., dissenting. I cannot see that there is any equity in the complainant's case.

The testator intended that his imbecile son should be provided with food and raiment in a decent and comfortable manner. The testator had four children and a small property. This son had always lived with the father and worked for him on the farm. To the widow who was to support this son, he gave his homestead farm (said to rent for $200) and some personal gifts. Looking at the language of the will and the surrounding circumstances, it seems to me that the only common sense view of it is that he intended that his widow should support the son in the same manner he had himself supported him at home. There is no reason to suppose he intended him to be boarded out in idleness. The amount of his property and the amount given the widow shows that this could not have been the case. He did not intend to give him money to spend, but to provide a comfortable home for him, and nothing more.

Now there is no evidence to show that the widow, or the representatives of the son to whom the land went after her, have ever been unwilling or refused to provide a home for the imbecile son. It is not even alleged. He remained with the widow from the father's death, in 1812, until about 1825, or 1826, when he went to live with a sister on a farm which had fallen to him and this sister. He went away of his own accord. And he lived with relatives until his death in 1863. From 1830 to his death he had guardians who, if they had supposed he had any legal or equitable claim on the widow or homestead, could have prosecuted for it. On the contrary, they boarded him out of his own property and charged it in their accounts.

From 1825 to 1864, nearly forty years, his guardians and friends never supposed they had any claim of the sort now made ; at any rate they never made any such claim, and this fact itself seems to me entitled to great weight in the decision of the case.