DECISION
In this case the plaintiff has commenced his action against the hierarchical defendants long after the statutory limitation in §9-1-14(b) of three years had run. The molestations alleged by the plaintiff occurred over a period of two years while he was thirteen and fourteen years old. He attained his majority on March 15, 1981. He commenced this action in 1992. He alleges he was of unsound mind at the time of the molestation by the perpetrator defendant. He claims that the impediment of his unsound mind was removed approximately two years before his action was commenced. Accordingly he invokes the tolling provisions of § 9-1-19 to preserve his right to commence his action when he did.
A hearing on the plaintiff's claim of tolling would be mandated by Kelly v. Marcantonio, 678 A.2d 873, 879-80 (R.I. 1996), if his claim were based on temporary amnesia. He bases his claim of mental infirmity, however, on his non-rational reaction to his being molested by his family priest, as well as to his feelings of shame and misplaced guilt arising from the sexual molestation, which he alleges occurred during his teen-age years. As a consequence of those reactions, he alleges, he was incapable of revealing the events of which he now complains. Since he could not even disclose his abuse to anyone else, it was inconceivable, he says, for him to have been able to bring suit. In effect, he claims that his psychological reaction to the sexual trauma blocked any exercise of his will to seek relief against his abuser. He asserts that he could live normally only if he could deny to himself the reality of the abuse. In essence, he contends that his irrational denial is the functional equivalent of protective traumatic amnesia so far as his ability to prosecute a lawsuit is concerned.
He says:
 "Just as Father Bob could not have done wrong, I could no more have sued the church than I could have firebombed a court house. You don't do that. People who attack priests or `The Church' are bad. `The Church' is very defensive and `against' people who attack `The Church,' or speak badly of priests. To attack `The Church' was to do something wrong; therefore I was the one who did something wrong every time I thought badly of Father Bob.
That force, coupled with the fact that `good Father Bob' was a central figure in my family, had me powerless to protect myself from his sexual advances in the first instance, and powerless to protect myself by bringing suit thereafter. My whole survival as an adolescent and young adult hinged on no one finding out! I know now that doesn't make any sense, and that is why I think it is reasonable to consider my mind unsound."
Ronald Mark Stewart, M. D., a qualified psychiatrist, opines to a reasonable degree of medical certainty that the plaintiff was disabled by virtue of unsoundness of his mind during the period from the time he was abused until a time at least as late as 1991.
He goes on to say:
 "It is my opinion, to reasonable degree of medical certainty, that although the unsoundness of mind that Daniel suffered from did not render him unable to carry on ordinary affairs, it is well recognized in the field of psychiatry that denial, disassociation and avoidance are clinical conditions associated with trauma. In Danny, those conditions led to a form of helplessness (the DSMIV specifically references `helplessness' in trauma victims) that psychologically incapacitated Danny from protecting himself from bring suit [sic].
 The power that the priest and the institution of the church held on the boy and within his family was such that he was unable to protect himself from the abuse by the priest at the time it was committed and thereafter. The fact that he functioned well in other areas says nothing about the significance of the disability. Avoidance in trauma victims is seen in connection with stimuli associated with the trauma. For Danny, that meant the fact of the abuse had to remain hidden to protect him and to rechallenge [sic] his energies away from the conflicted area."
The defendants have challenged the legal sufficiency of Dr. Stewart's opinion but have not attempted to contradict it.
For the purposes of this motion the Court must conclude that there is some admissible evidence that for a material period of time, while the limitation period would have been running, the plaintiff suffered from a mental impairment, which adversely affected his ability to commence this lawsuit against the hierarchical defendants.
The defendants argue, with the impressive support of the Courts of the United States applying what they understand to be the law of Rhode Island, see Smith v. O'Connell, 997 F. Supp. 226 (D.R.I. 1998), affirmed sub. nom. Kelly v. Marcantonio, 187 F.3d 192 (1st Cir. 1999), that the impairment asserted by the plaintiff and his expert cannot constitute the unsoundness of mind referred to in § 9-1-19. They argue that the phrase "of unsound mind" means a mental condition which utterly disables a person from managing his or her everyday affairs. The defendants equate unsound mind with insanity, mental incompetence and mental disability as those terms are used by courts and lawmakers in varying contexts at varying times. They argue vigorously and with widespread support from courts of other jurisdictions, as well as pertinent courts of the United States, that unsound mind, as used in the statute, cannot refer to the limited, subjective and peculiar personalized mental disability attributed to this plaintiff.
The parties each point to the functional applications of the concept of unsoundness of mind or mental incompetence in the law relating to mental health treatment, testamentary dispositions or criminal responsibility. None of these applications are useful because each of them applies to the specific legal function addressed by a party's state of mind. In mental health law the issue is whether or not a person subject to legal intervention lacks the mental capacity to manage his everyday affairs. If he or she does, the law will intervene to invalidate his or her financial transactions and will appoint a person to manage those affairs and, where necessary, will restrain the person's liberty for the purpose of care or treatment. In a case of testamentary disposition the question is not whether the subject of inquiry was capable of managing his or her everyday affairs but whether or not he or she had testamentary competence, irrespective of such a person's ability to manage his or her affairs. In cases of competence to stand trial the question is not whether the accused can manage his everyday affairs or execute a valid will but rather whether he or she can understand the nature of the proceedings against him or her and can assist in his or her defense. In the case of criminal responsibility, yet another question is presented, which has nothing whatever to do with the other tests for soundness of mind. In each case the test for mental soundness is related to the primary issue before the court: care and treatment of an incapacitated person, validity of a will, competence to stand trial, or responsibility for criminal conduct. In § 9-1-19, the mental unsoundness of the plaintiff is not related to the running of the statute of limitations against his or her claim.
Section 9-1-14(b), itself, is a paradigm of bright-line legislative determination. No matter how deserving a person may be for legal redress of a grievance, once the statute has run on the claim he or she cannot get justice in a court of law. The only exceptions are those provided by legislation like § 9-1-19. That section, too, is relatively stark. The running of the statute is tolled for four classes of plaintiffs: minors, prisoners, persons beyond the limits of the United States, and the class in which the plaintiff claims membership: persons of unsound mind. So far as this Court can see the only thing that all four classes share is that at one time it was difficult, if not impossible, for a member of any of these classes to have pursued a claim in the courts of this jurisdiction.
That difficulty has long since disappeared. Over a century ago it was held that, even though a person of unsound mind had a guardian who could have brought suit on his or her behalf, the statutory limitation period was nonetheless tolled pursuant to a predecessor to § 9-1-19. Bourne v. Hall, 10 R.I. 139 (1872). Likewise, even though a minor can sue through a next friend during his minority, the limitation is nonetheless tolled. See Bliven v. Wheeler, 23 R.I. 379, 50A.644 (1901). Surely, no one can any longer claim that imprisonment is the slightest impediment to the commencement of a civil action in this Court. Although no case has ever attempted to explain the reason to toll limitation periods on behalf of a foreign litigant, it is hard to understand why there is today no time limitation in Rhode Island courts within which a Canadian tort victim must bring suit against a Rhode Island resident. See Staples v. Waite, 30 R.I. 516, 76A.353 (1910).
It is important to note that § 9-1-19 tolls all limitations during the disabling period (so long as the plaintiff is a minor, is imprisoned, is out of the country, or is of unsound mind) for any lawsuit, not just the particular lawsuit in which some defendant has asserted the defense of the expiration of the limitation period. If the plaintiff is correct that § 9-1-19 is designed to preserve a party's claim because of the party's mental disability, then that disability must share the common feature of all the classes which enjoy the tolling factor of § 9-1-19. That common feature is a historic, even if obsolete, practical incapacity from commencing any lawsuit. The incapacity claimed by this plaintiff, however real, is not an impairment from bringing any lawsuit, but only from bringing this particular lawsuit. Such a mental impairment, even if it exists, is not an unsoundness of mind.
This Court is also satisfied that the expression "unsound mind" conveys a commonly understood concept among ordinary users of the English language. It is not a term of art, comprehensible, if at all, only to some lawyers and judges. Nor is it a psychological expression encoding a complex web of factors which can be understood only by specialists. The presence or absence of a sound mind is a matter of fact understandable by those ordinary users of English, who regularly sit on American juries. The mind is commonly considered to be that part of a human being which engages in the activity called thinking. A mind is unsound where the person's thought process can be observed to be somehow impaired to a degree which interferes with the person's ability to function as a human being.
This Court is satisfied that the common understanding of unsoundness of mind refers to an impairment greater than what is commonly called peculiarity, eccentricity, emotional maladjustment, or the like, but something less than the utter incompetence as urged by the defendants. Unsoundness of mind is commonly understood to be a general impairment affecting a person in all the life situations the person encounters. The unsoundness of mind, referred to in § 9-1-19 is far too general to be as particularized as the plaintiff and his experts claim. This Court is satisfied that the unsoundness referred to in the statute must impair the plaintiff's ability to bring any lawsuit in the courts of this State, whether or not he or she can otherwise function autonomously in today's society.
This Court therefore concludes that, even accepting the plaintiff's description of his mental condition at the time of his alleged abuse, and even assuming the reliability of the expert opinions shown to the Court, the plaintiff was not of unsound mind within the meaning of § 9-1-19. Accordingly, the applicable limitation period was not tolled by that provision of § 9-1-19.
The Court has carefully considered the plaintiff's argument that the hierarchical defendants took such advantage of a confidential relationship between the plaintiff and the church they represent as to create the mental condition which the plaintiff alleges inhibited him from bringing suit. Since the Court has concluded that the plaintiff's mental condition, whether or not induced by constructive duress or coercion, was not unsoundness of mind under the statutory provisions, that argument is irrelevant to the issue being adjudicated.
The defendants may enter a partial summary judgment in this case declaring that the limitation period in § 9-1-14(b) as to this plaintiff was not tolled by operation of the unsound mind provision of § 9-1-19.